1 | Ron S. Bamieh, SB 159413
2 | David R. Ring, SB 134823
  | Bamieh & Erickson, PLC
3 | 692 E. Thompson Blvd
  | Ventura, Ca. 93001
4 | 1 (805) 643-5555

5 | Arthur R. Angel, SB 214611
  | 1305 N. Poinsettia Place
6 | Los Angeles, Ca. 90046
  | 1 (323) 656-9085
7

8 | ATTORNEYS FOR QUI-TAM PLAINTIFF,

FILED
2012 SEP 18 PM 12:53
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

UNITED STATES DISTRICT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

THE UNITED STATES OF AMERICA, )
ex rel RBC FOUR CO. LLC, )
 )
PLAINTIFFS, )
 )
vs. )
 )
THE WALT DISNEY COMPANY., a )
Delaware Corporation; THE WALT )
DISNEY COMPANY, aka WALT )
DISNEY PRODUCTIONS; DISNEY )
ENTERPRISES, INC.; DISNEY )
WORLDWIDE SERVICES, INC.; )
DISNEY CORE SERVICES, a division of )
DISNEY WORLDWIDE SERVICES, )
INC. and DOES 1 through 10, )
Inclusive, )
 )
 )
DEFENDANTS. )
 )
 )

CASE NO. CV 12-8036 -JAK
(VBKx)

COMPLAINT FOR DAMAGES:

1. VIOLATION OF 31 U.S.C § 3729 (a) (1) (G), et seq., QUI-TAM.

2. VIOLATION OF CERCLA §104 (e) (5), 42 U.S.C. § 9604 (e)(5), FALSE STATEMENTS.

3. VIOLATION OF CWA, § 301(a), 33 U.S.C. § 1311(a), et seq. NO NPDES PERMIT.

FILED IN CAMERA AND UNDER SEAL PUSUANT TO 31 U.S.C § 3730 (b), et seq.

PLAINTIFFS, for their Complaint against the DEFENDANTS allege as follows:

DOCKETED ON CM
SEP 18 2012
BY ____ 115

-1-

QUI-TAM COMPLAINT

## FACTS RELEVANT TO ALL CAUSES OF ACTION

## THE PARTIES

1. PLAINTIFF RBC Four Co., LLC, "RBC", is a small environmental firm registered with the state of California as a Limited Liability Company, "LLC" and Doris J. Nichols, is an individual who is one of the qui tam "relators" in this action and has the standing as an original relator to allege these violations of law and collect the fees, fines, penalties and treble damages on behalf of the United States of America under the authority of 31 U.S.C § 3730 (b) (1) for violation of the False Claims Act, "FCA" 31 U.S.C. § 3729 (a) (1) (G), reverse false claims; and violation of the Comprehensive Environmental Response, Compensation and Liability Act, "CERCLA" of 1980 42 U.S.C. § 9601-9675 as amended, for CERCLA or Superfund § 104 (e) false responses.

2. RBC is acting in the public interest as whistle blowers, with Doris J. Nichols as co-relator along with William Dunlap as original relator, collectively "PLAINTIFFS". PLAINTIFFS and experts are persons dedicated to protecting the environment, promoting human health, and improving employee safety in the workplace through civil enforcement of environmental protection laws. PLAINTIFF RBC [ is based in Ventura, California. PLAINTIFFS are acting in the public interest in this action on behalf of taxpayers, citizens, and as "persons" of the United States of America.

3. The Qui-tam PLAINTIFFS are the original source of information, or relator, with direct and independent knowledge of the information upon which the material allegations giving rise to this Complaint and who voluntarily provided this information to the State of California first on June 11, 2009 and formally by way of a disclosure statement on Sept 21, 2010; and to the United States government Environmental Protection Agency, "EPA" by way of a copy of a state disclosure statement in May 2011 . Relators have made a supplemental Disclosure Statement and

submitted a continuing evidence book to the state of California Regional Water Quality Control Board (" RWQCB") on August 12, 2012.

4.    Before this date PLAINTIFFS and relator expert Dunlap gave nearly identical information to the EPA investigators before EPA sent DEFENDANT the most recent 104 (e) Demand Order in Dec 2010, but prior to filing this suit. This relator- exclusive evidence caused the EPA to issue a second and amended CERCLA 104 (e) Demand Order upon the DEFENDANT on April 7, 2011, superseding the previous order for information. PLAINTIFF and relator expert are again providing written disclosure of the updated information and evidence giving rise to this complaint, but now to the United States Dept. of Justice and the Administrator for the Environmental Protection Agency as first jurisdictional authorities, concurrently with the filing of this complaint.

5.    DEFENDANT, The Walt Disney Co, and each Defendant alter ego entity (hereinafter "DEFENDANTS") was, and at all times herein mentioned, is registered with the California Secretary of State as a Delaware Corporation with headquarters located at 500 South Buena Vista Street, Burbank, California. DEFENDANT DISNEY was, and at all times herein mentioned is, the owner and operator of the 500 S. Buena Vista property ( hereinafter the "Studio Lot"). This property is within the boundaries of the EPA San Fernando Valley Superfund Site, "Site".

6.    PLAINTIFFS are informed and believe, and based upon information and belief allege, that DEFENDANTS dumped, released and deposited and continue to cause or not to halt the release or migration of pollutants absent a NPDES permit, including but not limited to Chromium VI, "Cr. VI" contaminated heating/cooling water containing Chromium and Chromium compounds as toxic waste materials from the Studio Lot.

7.    DEFENDANTS' past releases of contaminated heating/cooling waste,water and their unpermitted and unchecked trespass into and onto the City of Los Angeles 11 acre Polliwog

QUI-TAM COMPLAINT

Park, have later flowed into waters of the United States via percolation or directly into the Los Angeles River as waters of the United States.

8. PLAINTIFFS' 2006, 2009 and now Dec 2010, and Oct 2011 test results show significant levels of pollutants have been discharged from the Studio Lot or have flowed off the DEFENDANTS' property to downstream areas, including but not limited to the Superfund Site soils and Glendale groundwater plumes.

9. Test results in May 2009 by other environmental Plaintiff Environmental World Watch, Inc., "EWW" showed substantial (1200 ug/L or ppb) Cr VI contamination coming from a "secret pipe" (aka Parkside Drain) which results and others caused Dunlap's formal disclosure to the RWQCB officials in June 2009. These secret pipe results, the pipe unknown to regulators, indicated that Cr VI contamination was currently being discharged from the Studio Lot into the Los Angeles River.

10. DEFENDANTS' subcontractor, URS', test results of the Studio Lot in their report of Aug 30, 2011 show significant levels of Cr. VI in the Studio Lot surface and sub soils resulting in percolation into waters of the Site during rain events, thereby permanently contaminating the groundwater/aquifer of the Glendale north plume. Relator expert Dunlap provided the data for these URS testing locations in his meetings with RWQCB Los Angeles board members and investigators in Sept 2010.

11. DEFENDANTS' fraudulent concealment of these damages to the groundwater of the Site and discharges containing pollutants absent a NPDES permit are inconsistent with their obligations to be truthful during the EPA investigation of contamination sources under CERCLA § 104 (e) and are further egregious acts necessitating corrective action for false or misleading statements in disregard of the authority of the United States of America and in violation of the FCA, as amended.

QUI-TAM COMPLAINT

12. PLAINTIFFS are informed and believe that all DEFENDANTS, and each of them, are responsible negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein.

13. PLAINTIFFS are informed and believe that DEFENDANTS caused and/or continue to cause exposures, unreasonable risk and damages to the United States of America Superfund Site and to innocent private citizens of the state of California, either through each DEFENDANT'S own conduct or through the conduct of its agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing the damages, or in some other actionable manner.

## BACKGROUND INFORMATION

14. PLAINTIFF expert Dunlap was hired by the Burbank Rancho Home Owners Association in Jan 2006 for the purpose of investigating any type of contamination at one 11-acre parcel of land in the City of Burbank owned by the City of Los Angeles, commonly referred to as the Polliwog Park parcel.

15. Dunlap did testing in the Polliwog in January and June 2006 as part of the investigation concerning, an effort to oppose a Draft EIR for a sewer project proposed by the City of Los Angeles going through the Burbank Rancho area, which revealed the existence of significant quantities of Cr. VI a dangerous carcinogen and reproductive toxicant listed by the State of California under Proposition 65, and as a "hazardous substance" under CERCLA.

## ACTIONS OF DEFENDANTS

### PREVIOUS ALLEGATIONS

16. The Walt Disney Co. is operating and has operated a 50-acre Studio Lot film production and broadcast facility at 500 Buena Vista, Burbank since 1938. Around 1939 DEFENDANTS started using groundwater in the air conditioning and heating system, disposing of the spent

water after its use into the street next to the Studio Lot facility. The Dunlap with EWW and subsequent RBC investigation have revealed that DEFENDANTS have, since as early as December 1939, utilized Cr. VI and its compounds in a cooling and heating water system designed by General Electric Refrigeration engineers in Bloomfield New Jersey for air circulation and comfort heating/cooling at 500 South Buena Vista Street, Burbank, CA. Furthermore, the DEFENDANTS have utilized air cooling water treatment chemicals including Cr. VI in cooling towers as this contamination sloughed off infrastructure piping from 1990-2012 at the same DEFENDANT Buena Vista Facility, or "Studio Lot".

17. DEFENDANTS' negligent behavior and specifically the alleged fraud started in 1990 from a series of regulatory events over groundwater and its use by DEFENDANT as a source for employee comfort heating/cooling.

18. On or about March 14, 1991 the EPA Region IX sent a 104 (e) Demand Order to Disney for information relative to their investigation into Potentially Responsible Parties, PRP's" for the contamination of the San Fernando Valley Site.

19. DEFENDANTS responded to this 1991 EPA information request with false and misleading statements and/or documents that had been altered to conceal material information. Specifically omitted from DEFENDANTS response were two pages that were a part of a previously filed RWQCB Well Investigation Program May 30, 1990 Chemical Use Questionnaire.

20. The two pages omitted were relative to two of the Chemicals of Concern that EPA was interested in. Both Chromium and Trichloroethylene would later turn out to be the driving contaminants in the entire "Site" clean –up.

QUI-TAM COMPLAINT

21. DEFENDANTS' 2010 deposition testimony by Disney employee Lee Tope (See EWW v. Disney, Central District Court for California 2:09-cv-4045) revealed that DEFENDANTS also discharged waste cooling water under Riverside Drive on the south side of the Studio Lot and into the Polliwog Park west end of the open vacant land from 1939-1960 which later has leached into groundwater of the Superfund Site and both the Glendale north and south plumes.

22. These releases by DEFENDANTS caused the contamination of all the downstream areas found with DEFENDANTS resistant Cr VI, including but not limited to the Polliwog Park area, and City of Los Angeles Headwork's spreading basins via wet and dry deposition of contaminants released at the DEFENDANTS' Studio Lot property lines. These discharges also caused contamination of all the downstream and downwind areas of the Site, including but not limited to the Glendale north and south groundwater plumes.

23. These discharges of waste waters containing recently found Antimony, Arsenic, Copper, Chromium, Cr. VI, Lead, TCE, PCE, Zinc and total organic carbon,( "TOC") were by DEFENDANTS without reporting or permits of any nature, including but not limited to, NPDES permits.

24. These releases of contaminated waste waters by DEFENDANT, where they may pass into any source of drinking water or onto land where they may probably pass into any source of drinking water is also prohibited by the statutes complained of herein. PLAINTIFFS allege the releases continue today.

25. These discharges are to waters of the state in violation of California Health and Safety Code §25249.5 et seq., and the California Water Code. These unpermitted discharges are also in violation of the Federal Clean Water Act under § 301(a), 33 U.S.C. § 1311(a), for discharging pollutants from a point source (their storm water system) to waters of the United States (the Los Angeles River) without a National Pollution Discharge Elimination System, "NPDES" permit.

These violations and concealment are ongoing and continue today, requiring injunctive relief.

26. The use of these hazardous substances and the subsequent release by DEFENDANTS via waste water discharge conduits at the Studio Lot was done for each day after January 1977. Part of this released wastewater, after being discharged by the Studio Lot off site, traveled down various storm conduits including but not limited to Mariposa Drain, Parkside Drain and Buena Vista Drain into the Los Angeles River, thus contaminating the groundwater of the Superfund Site via the Glendale narrows sandy bottom.

27. This discharge was not legal under a variety of prohibitions, including but not limited to the Federal Water Pollution Control Act Amendments of 1972, "CWA". This CWA provided that a permit was required for these non storm discharges.

28. Further, the CWA required that DEFENDANTS' discharges of heating/cooling and or storm water be "uncontaminated".

29. When the CWA permit requirements for discharged wastewater were passed in 1974 in the form of NPDES permits, DEFENDANTS made no effort to obtain such a permit, in violation of the CWA.

30. When the Clean Air Act, "CAA" regulations were passed in 1987 requiring toxic air release reporting under AB 2588, to the State of California South Coast Air Quality Management District, DEFENDANTS made no effort to inform the District that they were releasing Toxic Air Contaminants, "TAC'S" or water containing the listed TAC'S, including but not limited to Antimony, Arsenic, Cr. VI, Lead along with highly evaporative TCE, and PCE.

31. In or about 1981 the EPA Superfund Site Investigation started in the San Fernando Valley searching for the responsible parties that had contaminated the valley aquifer (groundwater) and methods of cleaning up the contamination and holding those parties financially responsible.

32. When the EPA Superfund Investigation team started informing the public in 1986 that the

-8-

entire San Fernando Valley aquifer/groundwater was contaminated with TCE and PCE, DEFENDANTS did nothing. Nothing was done by DEFENDANTS even when EPA announced publicly in 1991 the presence of Cr. VI in the same Burbank Site groundwater DEFENDANTS were using for comfort heating and cooling.

33. The PLANTIFFS allege negligent conduct after 1986 as the DEFENDANTS failed to curtail the use of the groundwater as air heating/cooling water and more importantly started a practice of "knowingly" disposing of hazardous substances down offsite residential streets that was inhaled, walked through and played in by humans and their pets for multiple years even after TCE, PCE and Cr. VI were added to the CA Proposition 65 list as early as Feb. 27, 1987.

## NEW ALLEGATIONS

34. On or about Sept. 1, 2011 PLAINTIFFS were informed by sources that DEFENDANTS have utilized dangerous contaminated groundwater in the Studio Lot air conditioning and heating systems, "HVAC", and exposing employees to unreasonable inhalation dangers.

35. PLAINTIFFS allege the use of contaminated groundwater in the Studio Lot original 1939 HVAC was for controlling the amount of moisture in the Animation building work-space air so as to not damage the artwork produced.

36. PLAINTIFFS allege this business practice and policy exposed workers in these areas to hazardous substances beginning in at least 1939, and that those chemicals, including but not limited to TCE, PCE, Cr. VI and 1,2,3-TCP were later identified by the state of California as carcinogens and/or reproductive toxicants. These chemicals are also "hazardous substances" by definition under the CERCLA.

37. PLAINTIFFS allege that this contaminated groundwater was used as a "jet stream" in all the Studio Lot art work areas to control humidity from 1939 till at least Feb 1993 and

-9-

DEFENDANTS kept this activity a secret to conceal this 'unreasonable risk' to employees in violation of CA. Health and Safety Code § 42402 *et seq.*

38. PLAINTIFFS allege that DEFENDANTS further used contaminated groundwater containing TCE, PCE, and 1, 2, 3-TCP as make up water for cooling towers from at least 1990 till 2011. This illegal business practice, along with the use of contaminated groundwater as humidity control, was also kept secret from employees and neighbors to conceal, and this conduct tolled the statute of limitations by fraudulent concealment.

39. Recent testing of the Polliwog Park and adjacent properties in Dec 2010 (Cal Science results), and August 2011 (URS) reveals that the Studio Lot and Polliwog Cr. VI dust still exist in the VI valence in third party residences and living environments.

40. The presence of DEFENDANTS' exclusive Cr. VI waste water matrix residues at the east property line of the Studio Lot and now away from the Studio Lot has resulted in permanent damage and continuing property damage to new public and private lands, including but not limited to Los Angeles Equestrian Center, Griffith Park, Travel Town, Los Angeles Zoo and Gene Autry Museum areas downstream and/or down wind. These scientifically distinct Cr. VI deposits are DEFENDANTS' discharges that because of their "one-of-a-kind" chemical characteristics via the use of sulfamic acid are exposing new persons and will continue to so expose for many years if not remediated.

41. This negligent conduct is now compounded by DEFENDANTS continuing to conceal their previous conduct in 2010/2011 and now, in 2012, to avoid or conceal their previous obligations.

42. DEFENDANTS have vehemently denied the "Parkside Ave discharges" for decades including today, further delaying remedy or remediation to avoid liability. PLAINTIFFS alerted regulatory agencies in 2009 to the previously unknown Parkside Drain DEFENDANT "solely utilized for waste water discharge," which helped start the current investigation.

43. PLAINTIFFS today allege DEFENDANTS' concealment started in 1990-1991 as DEFENDANTS, along with 2500 other Valley companies with industrial permits, received a letter from the EPA Superfund investigators for information about hazardous releases to the environment and specifically to groundwater, soil or air.

44. DEFENDANTS' past discharges and the newly found Cr VI valence existence, off the DEFENDANTS' property, have caused the damages to third party property, exposures to newly found persons and/or the permanent damage to the environment and Superfund Site and groundwater as alleged herein.

45. These numerous false acts and nefarious plans to **conceal** the previous discharges absent a NPDES permit, with its applicable penalties and clean up requirements and the damages to the environment with their applicable penalties and clean up requirements are all violations of the California Water Code and Clean Water Act. The alleged false acts to conceal or reduce liability are violations of the reverse false claims statutes complained of now.

46. Many of the environmental reporting requirements failures and falsehoods [Air and Water] have never been corrected, each day now a separate violation of law. Also,, DEFENDANTS have never to this day [September, 2012] corrected the false disclosures to EPA after the March 14, 1991 104 (e) Demand Order, a civil offense today for each such day uncorrected.

47. On or about September, 2010 PLAINTIFFS complained again to the RWQCB that DEFENDANTS had unlawfully discharged heating/cooling water from the Studio Lot from new cooling towers erected in 1990, 1993 and 1996. The RWQCB was unaware such illegal and unpermitted conduct had occurred. PLAINTIFFS as relators further complained that these discharges of heating/cooling tower "blowdown water" were done without a required City of Burbank Industrial waste water permit. RWQCB also was unaware of these violations of the state

Water Code and CWA, as the discharges were into the Parkside Ave open conduit and later into the Parkside Drain pipe which discharged into the Los Angeles River.

48. On or about Oct 18, 2010 the RWQCB sent to DEFENDANTS a 13267 Demand Order requesting information about this PLAINTIF-F alleged activity and sought information about other PLAINTIFF- alleged discharges, including but not limited to all Cr VI discharges from the Studio Lot from 1939 till today.

49. On or about Oct 22, 2010 DEFENDANTS sent RWQCB the first of numerous documents that are the subject of this current litigation, firstly a letter response by DEFENDANTS' counsel Robert A. Antonoplis, a California admitted lawyer, asserting false representations to conceal the real illegal conduct of DEFENDANTS and to lessen the financial obligation to the state for the PLAINTIFF- alleged unlawful acts being investigated under the 13267 Order. This DEFENDANT- originated letter communication contains an exhibit as an attachment in the form of a 1987 document submitted to the Burbank Fire Department to ostensibly show that the alleged Potassium Dichromate and Sulfamic Acid use by Disney was by its photographic activities. However the exhibit was falsified or had whited out and changed CAS numbers to conceal or mislead.

50. On Oct 31, 2010 PLAINTIFFS started their analysis of the DEFENDANT'S Oct 22, 2010 response to RWQCB 13267 Demand and its representations. These PLAINTIFF- exclusive findings have become the additional foundational basis of the new Disclosure Statement that is a part of this action. The PLAINTIFFS' Disclosure Statement files created from Sept 2010 and up to and including June 17, 2012 are the "original relator" submission and a part of this complaint by reference.

51. On or about Dec 14, 2010 and again on April 7, 2011 the EPA sent a new CERCLA 104 (e) Demand Order to DEFENDANTS seeking the same RWQCB requested Cr VI information.

DEFENDANT responded to this Demand Order in May 2011 with basically the same falsehoods and document omissions as they had in their 13267 response to RWQCB previously. The only noticeable addition to the DEFENDENT May 2011 104 (e) responses was the addition of the "1999 MicroBac Cr VI document" that NBC News had placed in the hands of RBC and subsequently queried DEFENDANT via e-mail. This request by NBC for explanation, clearly after the **13267 response,** made the 104 (e) responses obviously contrived to correct the 13267 omission.

52.     On or about Jan 14, 2011 DEFENDANT responded to the RWQCB 13267 Order with a "work plan" as part of the Order. The DEFENDANTS' environmental contractor, URS Corporation,("URS") drafted this work plan which contained numerous false representations to conceal or decrease an obligation in violation of Ca Gov Code sec 12651 (a) (7) and deliberate omissions to avoid an obligation under the federal False Claims Act § 3729 (a) (1) (G).

53.     The DEFENDANTS' originated workplan by URS firstly was deficient in that it omitted 24 pages of DEFENDANTS' controlled crucial test data showing Cr. VI at the Studio Lot and specifically in the cooling towers (See state disclosure evidence file "T").

54.     The DEFENDANTS' work plan next falsified information regarding an important discharge waste stream in the form of film processing chemicals. The workplan states in pertinent part at page 13 section 3.3.3 that "chromium containing compounds were used in film processing operations at the Site and discharged (offsite) to the sanitary sewer". However DEFENDANTS' SB 14 certifications from 1991, under penalty of perjury, state that no film processing chemicals left the Studio Lot or were subject to SB 14 controls.

55.     The DEFENDANTS' work plan next falsified information regarding an exhibit used to mislead the RWQCB about the location of its previous heating/cooling water discharges into the "Vacant Property (Area A)". The "Vacant Property" is the in-use Polliwog Park damaged by

DEFENDANTS. The text of the workplan at page 11 states "A large portion of the infiltration area is located beneath the current footprint of the 134 Freeway (Figure 4)". Figure 4 is a EWW PLAINTIFF- originated plate from EEC that has been significantly altered by DEFENDANTS to give a false indication of where previous tests were taken in the contaminated Polliwog Park area or for further regulatory misinformation.

56. The DEFENDANTS' work plan next falsified information regarding its discharge of heating/cooling tower blowdown water to any other location then the sanitary sewer after Feb 26, 1993 (Page 11). This statement by itself indicts DEFENDANTS at least for discharging into the Burbank Industrial water waste system unpermitted waste streams from at least 1993-2000 as the DEFENDANTS' 1999 application for discharge of heating/cooling water is the first appearance of a request to discharge this waste water stream to the Public Operated Treatment Works of the City of Burbank.

57. Evidence collected and contained in PLAINTIFFS' state disclosure statement (incorporated by reference as it was sent to EPA in May 2011) supports the accusation that cooling tower blowdown water or cooling water from the well water system was unlawfully discharged into the Parkside Drain AFTER Feb 1993.

58. PLAINTIFFS' state disclosure file evidence is supplemented by other specific RBC evidence supporting the accusation that DEFENDANTS did in fact discharge heating/cooling water to the Parkside Drain or Parkside open channel during the 1939-2009 time frame. This contradicts DEFENDANTS' representations in the workplan at Pages 6, 7, 10, *et al*.

59. The DEFENDANTS' May 2011 104 (e) responses contained falsified information regarding the nature of unpermitted water discharges from the Studio Lot. DEFENDANTS have long maintained that the cooling system and heated water systems were "single pass" and not recirculating cooling or heating systems. PLAINTIFFS' evidence supports the accusation that <u>all</u>

*or most of the previous cooling and heating systems* were in fact hybrid single pass/recirculating or closed loop chilled water systems before Feb 26, 1993.

60.   The DEFENDANTS' 104 (e) response next falsified information regarding the use of Cr. VI in cooling towers. One of the missing and deliberately omitted documents indentified at paragraph 45 herein was a Feb 1999 (NBC doc) test result submitted to DEFENDANTS by MicroBac Laboratories showing Cr. VI in the "influent water" to the main cooling tower. This revelation, in and by itself, is a clear indication as to why the 23 other documents were withheld from both 2011 responses. PLAINTIFFS allege that this was further concealment to avoid an obligation.

61.   PLAINTIFFS' evidence supports the new allegation that DEFENDANTS' multi- decade use of the chemicals Hydroquinone, Ethanol, and Sodium Sulfite was for the sole purpose of masking their Cr VI use in cooling water, and that the current unique Total Cr v. Cr VI ratios found in the SFV Site soils and waters, including but not limited to under the Studio Lot, in Polliwog Park, and downstream,   are evidence of this conspiracy to conceal and willfully and knowingly endanger human health by such deceitful acts.

62.   PLAINTIFFS' evidence supports the new Aug 2012 allegation that the 27 Notices of Violation,( "NOV"s") issued DEFENDANTS by the City of Burbank from 1991-2002 alleging exceedances in Total Dissolved Solids, "TDS" and Sulfate concentrations in sanitary sewer waste water discharges are proof of these chemical- masking acts delineated herein.

63.   PLAINTIFFS' evidence supports the new Aug 2012 allegation that the City of Burbank issued a falsified 2001-2004 Industrial Waste Water permit in 2003 at the request of DEFENDANTS to stop the NOV's as the altered and illegally backdated permit was void of at least 20 pages of pretreatment requirements under Clean Water Act, "CWA" guidelines. These mandated- by- CWA- statute requirements were the TDS and Sulfate discharge thresholds that caused the issuance of the original NOV's.

64. All of these false representations and deliberate acts by DEFENDANTS, since at least as recently as July 2012, were done to avoid or conceal an obligation to the state and now federal government in violation of statutes.

65. Venue is appropriate in the District Court of California pursuant to 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331, 1345 and § 1391(b) and (c) because the claims arose and the threatened and actual releases of hazardous substances occurred in this district.

66. Venue is proper in the District Court of California because the DEFENDANT is headquartered in Los Angeles County at 500 South Buena Vista Street, Burbank, California; DEFENDANTS have violated one or more laws as alleged herein in Los Angeles County, and persons knowledgeable about the allegations herein reside in or near Los Angeles County.

### FIRST CAUSE OF ACTION

**(For Violations of FCA 31 USC § 3729 (a) (1) (G) by Concealing, and Falsifying Official Responses to CERCLA May 1991 and April 2011, et al § 104 (e) Demand Order, in Order to Avoid an Obligation to the United States of America.**

67. PLAINTIFFS re-allege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 66 inclusive.

68. DEFENDANTS have falsified responses, altered documents, and/or omitted important documents requested by the EPA 104 (e) Demand Orders of May 1991, 2007, Dec 2010 and April 2011 to avoid, reduce or conceal a (previous) obligation to government.

69. These acts were deliberate and calculated to further conceal the real nature of the illegal and unpermitted discharges from the Studio Lot of heating/cooling water, and or other contaminated waste water or other waste streams in violation of environmental laws and prohibitions complained of herein.

70.  DEFENDANTS are in violation of the federal False Claims Act in that the pertinent prohibition section specifically says:

> (a) (1) (G) "Knowingly makes, uses, or causes to be made or used, **a false record or statement** material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government..." (**Emphasis added**).

PLAINTIFFS allege DEFENDANTS have violated these statutes by concealment since the day of the Demand Order responses were submitted to the regulatory agencies and that this false record continues up to the present.

## SECOND CAUSE OF ACTION

**(For Violations of CERCLA § 104 (e) (5),**

**pursuant to 42 U.S.C. § 9604 (e)(5))**

71.  PLAINTIFFS re-allege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 70 inclusive.

72.  PLAINTIFFS seek civil penalties, treble damages on behalf of the United States of America and its taxpayers as the qui-tam PLAINTIFF, against DEFENDANTS for their violations of the statues delineated herein.

73.  These violations have resulted from the fraudulent concealment practiced non-stop by DEFENDANTS since at least 1991 by way of:

  a. altered documents on Oct 22, 2010 via CAS numbers,

  b. omitted important Cr VI rest results (23 documents),

  c. failure to acknowledge **3 cooling towers,**

  d. failure to correctly identify the type and nature of the **refrigerated** cooling system,

  e. failure to acknowledge the primary route of cooling discharge (Parkside residential area),

  f. failure to acknowledge the use of Cr VI in cooling towers,

-17-

g. failure to acknowledge the use of contaminated groundwater in its dehumidifier system exposing literally thousands of employees to unreasonable risk,

h. failure to acknowledge the use of groundwater in cooling tower make-up water and falsely insisting they purchased the water from the City of Burbank,

i. failure to acknowledge that it had no industrial waste discharge permit **ever** to discharge cooling tower blow down water to the City of Burbank Publically Owned Treatment Works,

j. failure to cease dangerous human exposures even after the EPA warned all industrial permit holders in 1987 of the existence of at least TCE and PCE in the groundwater,

k. failure to turn over requested documents defined as mandatory by the United Sates Environmental Protection Agency Dec 2010 and April 2011 104 (e) Demand Order and other regulatory agencies investigative orders,

l. failure to obtain a NPDES permit and continuing to conceal the constituents of its discharges to the Buena Vista catch basin and waters of the United States via the Los Angeles River after Oct 2011 Studio Lot "Buena Vista parking lot storm drain", et al test results.

m. deliberate use of chemicals to mask the Cr VI discharges by reversion to the appearance as Cr III contamination, and thus allege natural source contamination vs. man made.

There has been significant daily expense and costly delay in the EPA's ability to remedy the damage to the groundwater plumes of the Superfund Site caused by DEFENDANTS.

### THIRD CAUSE OF ACTION

(For Violations of CWA § 301(a), 33 U.S.C.

§ 1311(a), and CWA § 402 (p), 33 U.S.C.

§ 1342 (p), *et seq.*

74. PLAINTIFFS re-allege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 73 inclusive.

75. PLAINTIFFS allege DEFENDANTS have violated the CWA and General Permit by discharging water containing pollutants without NPDES permit in violation of CWA § 301(a), 33 U.S.C. § 1311(a), for discharging pollutants from a point source (their storm water system) to a water of the United States (the Los Angeles River).

76. PLAINTIFFS allege DEFENDANTS have violated the CWA and General Permit by CWA § 402 (p), 33 U.S.C § 1342 (p) for discharging storm water to the Los Angeles River without being in compliance with all the applicable provisions of § 402(p).

77. PLAINTIFFS allege DEFENDANTS have concealed the real constituents of their water discharges to reduce liability for not having a NPDES permit, a separate concealment in violation of the False Claims Act.

78. PLAINTIFFS allege these violations are ongoing and continuous violations that require injunctive relief and other immediate corrective action to halt further discharges and violations.

WHEREFORE, PLAINTIFFS on behalf of the United States of America pray judgment against DEFENDANTS as follows:

On the First Cause of Action:

1. For general damages according to proof;

2. For treble damages according to statute;

On the Second Cause of Action:

3. For general damages according to proof;

4. For special damages as a result of unreasonable risk according to proof;

5. For treble damages because of fraudulent concealment after Demand order;

6. For contributions to the remediation cost inquiry now under way in the form of EPA Administrative Order on Consent.

7. For punitive damages of at least $1,000,000,000.00,

or in the alternative seven thousand, seven hundred 55 days penalty at $25, 000 per day and increasing to $32, 500 per day according to statute;

On the Third Cause of Action:

8. For general damages according to proof;

9. For special damages as a result of continued violations according to proof;

10. For treble damages because of fraudulent concealment after Demand Order (s);

On All Causes of Action:

11. For costs of suit herein incurred; and

12. For such other and further relief as the Court deem proper.

## DEMAND FOR JURY TRIAL

13. The issues complained of herein are complex and the damages excessive. PLAINTIFF hereby demands a Jury Trial.

Dated: Sept 17, 2012

By: *[signature]*

Arthur R. Angel, ESQ
Ron S. Bamieh, ESQ
David R. Ring, ESQ
Attorney for the
UNITED STATES OF AMERICA,
(ex rel RBC Four Co, LLC)

QUI-TAM COMPLAINT